CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 1 8 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 7:05CR00008 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| JAMES EDWARD ELSTON, JR., ) | United States District Judge |
| ) | |
| Defendant. ) | |

This case is before the court on defendant's motion to suppress evidence seized from the vehicle in which he was an occupant. The defendant contends that the search violated his rights under the Fourth Amendment because law enforcement lacked either reasonable suspicion or probable cause to justify the seizure and search. For the reasons stated below, the court will deny defendant's motion to suppress.

## FACTUAL BACKGROUND

In the early morning hours of January 15, 2005, a Roanoke 911 dispatcher received a call from a resident of the Lansdowne housing project. The caller identified herself to the dispatcher but asked to remain anonymous for all other purposes. Her identity was not revealed to law enforcement during the ensuing events. The caller stated that she wanted to report a drunk driver leaving her home. She further stated that the individual had a loaded weapon in his car. She also reported that he was a black male wearing a light blue sweater, jeans and white tennis shoes and driving a blue truck with tag number 270464. The caller went on to state that the individual was highly intoxicated, had three clips for his weapon, and had talked about "letting them off in somebody." The caller also stated that the man's name was "Jimmy" and that he had just gotten

out of jail on a charge of hitting the mother of his child.

Another dispatcher spoke to officers in the area over the police radio stating that there was a report from a caller of a subject with a loaded weapon driving a truck with tag number 270464. The dispatcher relayed the caller's description of the individual to the officers and stated that the caller reported that he had brandished the weapon. The dispatcher also stated that the weapon was a nine millimeter handgun and that the subject had several clips. The dispatcher reported that the tag number had come back to a James Edward Elston, Sr. The original dispatcher also relayed information over the KDT, the computer system available in police patrol cars. That information included additional details about the truck and added that the caller reported that the subject stated he was "going to let the gun off."

Officer Jason Hicks of the Roanoke City police department located the truck in the parking lot of the Roanoke Housing Authority office near the Lansdowne housing project. He noted that the individual inside the truck, the defendant, was a black male. Officer Hicks ordered Elston out of the truck and took him into custody. Officer Hicks smelled a strong odor of alcohol on the defendant's person. Officer Travis Reed, who had also arrived on the scene, went to check the truck. Officer Reed saw a handgun grip between the driver's seat and the console in plain view. Officer Reed discovered that the handgun was a Glock pistol and was fully loaded. The officers also discovered another fully loaded magazine lying beside the gun. The officers ran a check of the gun, which revealed that the weapon was not stolen.

After Officer Hicks called in and learned that Elston had been convicted of a prior felony, Elston was arrested and transported to the jail. He was subsequently charged in a one count indictment with a violation of 18 U.S.C. § 922(g), which prohibits a felon from possessing a

firearm. Elston was previously convicted for two felonies for dog fighting and one prior charge of possession of a weapon by a felon. The defendant then filed this motion to suppress, and the court held a hearing on the motion on April 14, 2005.

## DISCUSSION

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search and seizure is presumptively unlawful, and the government bears the burden to prove that the search and seizure falls into one of the established exceptions. See United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005). An officer may stop an individual for further investigation under Terry v. Ohio, 392 U.S. 1 (1968), however, when he reasonably believes that criminal activity may be afoot. United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004). A court examines such a stop under the totality of the circumstances. Id. at 805. Once a Terry stop is authorized by such reasonable suspicion, an officer may conduct a protective frisk of the person of a suspect if he believes the person may be armed and dangerous. Id. at 807. Such a protective frisk may include the interior of the vehicle in which the suspect was sitting at the time of the stop when "the police reasonably believe that the suspect may be dangerous and that there may be readily-accessible weapons in his vehicle." United States v. Holmes, 376 F.3d 270, 280 (4th Cir. 2004).

In this case, the defendant contends that the anonymous tip provided to police through the 911 dispatcher failed to provide adequate grounds for reasonable suspicion that would justify a stop under Terry. The defendant relies upon the Supreme Court case of Florida v. J. L., 529 U.S. 266 (2000). In that case, the Court held that an anonymous tip that a black male standing at a bus

3

stop wearing a plaid shirt was carrying a handgun failed to contain sufficient indicia of reliability to supply the officer with reasonable suspicion. The Court noted that this was largely because such an anonymous tip rarely demonstrates "the basis of the informant's basis of knowledge." Id. at 270. The Court also noted that the informant's ability to identify a determinate person is not enough; instead, the reasonable suspicion required is that the "tip be reliable in its assertion of illegality." Id. at 272.

The government contends that J. L., supra, does not apply in this case because the tip at issue was not anonymous. The government points out that the caller did, in fact, identify herself by name to the 911 dispatcher, that 911 calls are routinely recorded, that police officers know that these calls are recorded and that officers are able to go through their supervisors to retrieve copies of the 911 recordings in cases of false reports. The government also attempts to ascribe the knowledge of the 911 dispatcher to law enforcement as a whole by employing the collective knowledge doctrine. See United States v. Pitt, 382 F.2d 322, 324 (4th Cir. 1967) (holding that probable cause "can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest").

In this case, however, the 911 dispatcher was a civilian, not a police department employee, and in any case, determining whether or not the tip was anonymous depends upon whether the officers on the scene were aware of the identity of the caller. See Marinis v. Village of Irvington, 212 F. Supp. 2d 220, 224 (S.D.N.Y. 2002) (tip deemed anonymous when officer failed to hear informant's name, the informant knew this and both agreed the informant would not have to give her name again). While stating that it had not defined the precise meaning of an "anonymous" caller, the United States Court of Appeals for the Fourth Circuit did note recently

4

that "[w]hile an 'anonymous' caller may be defined simply as one who does not identify herself, she could just as plausibly be defined as one who is unknown to the police. Such a definition, by focusing on the officer's knowledge, would be consistent with the officer-centered nature of reasonable suspicion analysis." United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004). In this case, the officers on the scene were unaware of the identity of the caller and admitted in their reports of the incident that they considered the informant to be anonymous. The court finds that the caller in this case was an anonymous informant for purposes of determining reasonable suspicion, but nevertheless finds that there was adequate reasonable suspicion to justify the seizure of Elston and the protective sweep of his truck.

In those cases "[w]here a tip is anonymous, it must be accompanied by some corroborative elements that establish the tip's reliability." United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004). In fact, "[a]n anonymous telephone tip that alleges illegal possession of a firearm but that merely identifies a suspect and his location does not itself provide reasonable suspicion for a Terry stop." United States v. Brown, ___ F.3d ___, 2005 WL 678741, *6 (4th Cir. 2005). Therefore, in the case of a crime such as possession of a concealed firearm, officers may need "corroboration of the extent of the tipster's inside information, in order to ensure that the tipster was in a position to know about the alleged illegal conduct." Perkins, 363 F.3d at 325. One form that this corroboration may take is that the caller may reveal "her general location and her basis of knowledge" such that the nature and substance of her tip demonstrate that she was in close proximity to the individual and events she was observing. Id. at 324; Brown, 2005 WL 678741 at *6 (corroboration may include "a basis for the informant's knowledge on this occasion").

5

In this case, the officers knew that the anonymous informant had supplied a description of the subject and of his vehicle. The descriptions were quite detailed, including the fact that the vehicle had handicapped tags, tinted windows and a silver tool box on the back of the truck. The dispatcher told them that the subject had brandished a firearm and possessed a nine millimeter handgun with three clips of ammunition. Furthermore, the patrol car computer transmission included the information that the subject had threatened to "let the gun off" and indicated that the caller had received the impression that he might hurt someone. This information indicated that the caller had been in close contact with the defendant and had heard his threatening statements.

In addition, in J. L., supra, there was no allegation of illegal activity, only that the subject possessed a firearm at a particular location. The defendant's alleged threatening language and the conduct described as brandishing a firearm distinguish this case from that in J. L. In fact, the Supreme Court has indicated that in certain circumstances "the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." Florida v. J. L., 529 U.S. 266, 273 (2000). While this case does not involve a person carrying a bomb, it does involve a report of an individual brandishing a firearm, a crime in itself, and making threats to let the gun off. In this situation, it was reasonable and appropriate for police officers to stop such an individual under Terry to investigate the situation further.

The defendant next claims that the officers lacked reasonable suspicion to believe that he was a felon in possession of a firearm. In general, however, investigating officers need only have a reasonable suspicion that criminal activity is afoot. United States v. Mayo, 361 F.3d 802, 806 (4th Cir. 2004). The officers had been told that the subject was brandishing a firearm. That alone could have led them to believe that the subject was engaged in criminal activity, even if they had

6

no knowledge of Elston's prior criminal record.

The defendant next contends that, even if the officers possessed reasonable suspicion to make a Terry stop, they actually made an immediate warrantless arrest of Elston without probable cause. The defendant argues that the anonymous tip was insufficient to support probable cause and that the officers failed to ask him any questions or to perform any investigation before they placed him in custody. During a stop of a vehicle justified by a reasonable suspicion of criminal activity, however, law enforcement officers "may briefly detain and investigate such a vehicle and its occupants." United States v. Singh, 363 F.3d 347, 355 (4th Cir. 2004). Likewise, in this case, if the officers had the reasonable suspicion to justify stopping Elston, they could also briefly detain him, and the vehicle in which he had been sitting, for further investigation. In fact, any felony stop procedures used for officer safety purposes would not convert a Terry stop into an arrest. United States v. Holmes, 376 F.3d 270, 276 n. 2 (4th Cir. 2004).

In Officer Hicks's report, he states that he saw the vehicle and then ordered Elston out of the truck "by felony stop." The officers had information that Elston had a weapon and ammunition and had brandished the weapon and made threatening statements. That information was enough to justify a belief that Elston may have been dangerous and may have had a weapon in his vehicle. Officer Reed also indicated that he wanted to check the truck to ensure that there was no additional person inside who might be a danger to the officers on the scene. An officer may conduct a protective frisk of the interior of the vehicle in which the suspect was sitting at the time of the stop when "the police reasonably believe that the suspect may be dangerous and that there may be readily-accessible weapons in his vehicle." United States v. Holmes, 376 F.3d 270,

7

280 (4th Cir. 2004). Elston was taken into temporary custody as part of the felony stop procedure, after which Officer Reed discovered the handgun in plain view in the vehicle. Elston was arrested only after the officers located the weapon. Therefore, because the initial stop was justified by reasonable suspicion, the officers were justified in detaining Elston and conducting the frisk of the passenger compartment of his vehicle.

## CONCLUSION

Because law enforcement officers had reasonable articulable suspicion to believe that Elston may have been engaged in criminal activity on the date in question, the defendant's motion to suppress will be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 18th day of April, 2005.

*[signature]*
United States District Judge